**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| WILLIAM RICHTER, | |
| Plaintiff, | |
| v. | Civil Action No. 2:23-cv-00550-CCW |
| DUQUESNE UNIVERSITY OF THE HOLY SPIRIT, and JAMES MILLER, as an aider and abettor of discrimination, | |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

"[Defendant James Miller] did not want me to leave the University." That is how Plaintiff William Richter described Miller's response to Plaintiff's offer to retire less than a year prior to his termination from Defendant Duquesne University. Ultimately, however, Miller was forced to terminate Plaintiff's employment based on lost faith in Plaintiff's ability to perform the duties of his role in response to serious policy violations and mounting performance issues.

The "straw that broke the camel's back" was Plaintiff entering into an agreement to name a major University wide center with an estate gift that was fully revocable, without approval of the Gift Acceptance Committee and the President, as required by University Policy. Now, Plaintiff, 62 years old,[1] alleges age discrimination and retaliation by the University and Miller (57 years old), the very person who told Plaintiff that he did not want Plaintiff to leave the University when Plaintiff was 61. Plaintiff has no direct evidence of any discriminatory or retaliatory termination, and the undisputed record is devoid of circumstantial evidence of improper motive.

The reality: Plaintiff was 55 years old when he was hired. He was promoted at 60 years old. And he was told not to retire by Miller when he was 61 years old. Plaintiff adduced no evidence of discriminatory or retaliatory animus. His only true comparator is his former supervisor, Mary Frances Dean, a woman the same age who was disciplined for the same policy violations and, was not dismissed because she did not have the level of involvement and prior issues as Plaintiff. In desperation, Plaintiff ignores his major policy violations and clings to grievances he had with younger employees and the temporal proximity to his alleged protected behavior to cobble together claims.

Plaintiff cannot muster enough evidence to establish even a *prima facie* case of age discrimination and retaliation. His claims are meritless, and Defendants respectfully request that

---

[1]   All ages are provided as of the date of Plaintiff's termination.

this Court grant summary judgment in their favor and dismiss Plaintiff's Complaint in its entirety.

## I.   BRIEF FACTUAL BACKGROUND[2]

Duquesne is a private Catholic institution of higher education that relies in part on donations to fund its mission.  Defendants' Concise Statement of Material Facts ("SMF") ¶¶ 1-2. Duquesne's Advancement Division supports the University and its mission by building relationships with its various supporters and securing critical private philanthropic support. SMF ¶¶ 3-4. The prior VP of the Advancement Division, John Plante, left the University in 2021 due to dissatisfaction by the Administration and the Board of his leadership and the performance of the Advancement Division. SMF ¶ 47. Miller was thereafter appointed to replace him and has led the Advancement Division since July 2021. SMF ¶¶ 5, 47.

Duquesne hired Plaintiff as a Major Gift officer in the Advancement Division when he was 55 and promoted him to Senior Major and Gift Planning Officer when he was 60. SMF ¶¶ 7-10. Plaintiff was responsible for all phases of a donor relationship to secure gifts for the University. SMF ¶ 11. In his role, Plaintiff was required to keep donor information strictly confidential. SMF ¶¶ 187-91. The University takes donor confidentiality seriously, as evidenced by its termination of a gift officer in October 2022 for a confidentiality breach. SMF ¶¶ 197-99.

Plaintiff's employment was marred by conduct and performance issues that called into question his judgment and professionalism with his colleagues on multiple occasions. *See* SMF ¶¶ 15-46. Still, Plaintiff remained a valued employee of the University.

In early 2022, Miller conducted a rebalancing of gift officer portfolios, as some portfolios had become bloated. SMF ¶ 53. For instance, Plaintiff's portfolio had 431 assigned donors, which Plaintiff agreed was too many. SMF ¶ 55-56.

---

[2]   Defendant refers the Court to its *Concise Statement of Material Facts* filed contemporaneously with this *Memorandum of Law* for additional facts in support of its Motion for Summary Judgment.

In March 2022, Plaintiff discovered the portfolio rebalancing when another gift officer, Melissa Krebs, met with a donor previously assigned to him ("Donor A") and secured a $50,000 gift. SMF ¶ 57. Plaintiff felt that Krebs "stole" his donor and that Krebs "lie[d]" in communicating with the donor when she said that Plaintiff had "shared some of [Donor A's] thoughts . . . with her." SMF ¶ 72. Krebs learned information about Donor A through Plaintiff's contact reports, which are required entries into a University data system available to all gift University officers that describe interactions with and information regarding a donor. SMF ¶¶ 183-86. Plaintiff claimed that Donor A had given him information that was confidential and that Krebs' comment jeopardized that confidence but admitted that he did not recall Donor A saying that to him, could not identify what the confidential information was, and admitted that any "confidential" information could have been shared among Advancement team members. SMF ¶¶ 73-77.

After trying to resolve the issue with Miller, Plaintiff filed a complaint with Human Resources in April 2022 and a second complaint in May 2022 when Krebs attempted to book Donor A's gift. *See* SMF ¶¶ 86-110. Notably, Plaintiff's first complaint does not reference age, SMF ¶ 87, and the first and only time that Plaintiff refers to age discrimination is at the bottom of his second complaint, where he states that, if Krebs receives credit for the gift, he would be "left with no alternative but to file an age discrimination complaint, as clearly Jim, through these actions, is blatantly favoring a much younger . . . employee[.]" Ex. 30, May 15, 2022 Email, Duquesne_00163-66. After thorough investigation, Human Resources recommended that none of the subjects of the investigation – Krebs, Krebs' supervisor Adam Viers, and Miller – be found to have violated Duquesne policies. SMF ¶¶ 111-19. Provost David Dausey accepted Human Resource's recommendation, and Plaintiff's subsequent appeal for material procedural error was rejected by the President's Chief of Staff, Daniel Gilman. SMF ¶¶ 120-24.

Unrelated to the issue with Donor A, Plaintiff sought to book a $1.4 million gift from a married couple (the "Donor Couple") in exchange for immediate and perpetual naming rights to a University-wide center. *See* SMF ¶¶ 125-27. The gift Plaintiff negotiated was deferred until the deaths of the Donor Couple and was completely revocable during their lifetimes. SMF ¶¶ 127, 151-58. Plaintiff arranged for the Donor Couple and Dean to sign a donor statement of charitable intent ("DSCI") to that effect. *See* SMF ¶¶ 144-58.

Duquesne has policies for accepting large gifts and for granting naming rights, the Gift Acceptance Policies and the Policy on Gift Related Naming Opportunities (the "Gift Policies"). *See* ¶ 132. The policies ensure a consistent protocol – which, in most cases, requires the approval of the Gift Acceptance Committee and the University President – because naming rights are "very valuable." SMF ¶¶ 130-31, 133. The Donor Couple's DSCI violated those policies in the following ways: (1) the gift was 100% deferred; (2) the gift was revocable (whereas the naming rights were not); (3) the gift amount was 60% lower than the recommended threshold for naming rights to a university-wide center; and (4) the gift was pushed through without approval of the University's Gift Acceptance Committee or the President. SMF ¶ 172. Plaintiff was aware of, at minimum, the requirement to present the gift to the Gift Acceptance Committee. *See* SMF ¶¶ 144-45.

When details of the gift surfaced in late July 2022, the University investigated the gift. SMF ¶ 160-61. As part of a thorough investigation, Human Resources interviewed all involved, including Plaintiff, who "refused to answer several of [his] questions" and "abruptly" left before the interview was completed. SMF ¶¶ 161-71. Ultimately, Human Resources confirmed the policy violations. SMF ¶ 172.

The debacle with the Donor Couple was the final straw for Miller, who terminated Plaintiff because he "lost faith in [Plaintiff's] professional judgment and effective internal and external

engagement abilities." SMF ¶¶ 174-75. The basis for Miller's eroded trust included a "pattern of performance." SMF ¶ 175. Dean was also disciplined for her role in the Donor Couple's DSCI, but due to her lesser involvement and lack of prior issues, she was issued only a formal written warning. SMF ¶ 181. She was the same age as Plaintiff at the time of her discipline and had also made an internal complaint involving Miller and alleged discrimination. SMF ¶ 182.

## II.   <u>LEGAL ARGUMENT</u>

Plaintiff brings claims under the Age Discrimination in Employment Act ("ADEA") and the Pennsylvania Human Relations Act ("PHRA").[3] Plaintiff cannot meet his burden of persuasion either on making an initial, *prima facie* case of discrimination or retaliation or in establishing pretext. Plaintiff's claims fail as a matter of law and should be dismissed.  In short:

***First,*** Plaintiff cannot satisfy his burden of proving a *prima facie* case of age discrimination, because he cannot point to record evidence that supports an inference of discrimination. His role was not replaced, much less by a younger employee, and he cannot adduce evidence of a viable comparator who is younger than him. ***Second***, Plaintiff cannot satisfy his burden of proving a *prima facie* case of retaliation, because he cannot demonstrate a causal nexus between alleged protected activity and his termination for two main reasons. There is no record

---

[3]   Age discrimination and retaliation claims under the ADEA and PHRA are analyzed coextensively. *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015) (internal citations omitted); *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015). Because Plaintiff has not proffered any direct evidence of age discrimination or retaliation, his claims are analyzed under the burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Palmer v. Britton Indus.*, 662 F. App'x 147, 150 (3d Cir. 2016). In *Smith v. Allentown*, the Third Circuit summarized that framework as follows:

> Under *McDonnell Douglas*, the plaintiff bears the burden of proof and the initial burden of production, having to demonstrate a prima facie case of discrimination [or retaliation]… Once the plaintiff satisfies these elements, the burden of production shifts to the employer to identify a legitimate non-discriminatory [or non-retaliatory] reason for the adverse employment action.  If the employer does so, the burden of production returns to the plaintiff to demonstrate that the employer's proffered rationale was a pretext for age discrimination [or retaliation].  **At all times, however, the burden of persuasion rests with the plaintiff.**

589 F.3d 684, 689 (3d Cir. 2009) (emphasis added).

evidence that Miller – the decisionmaker as to Plaintiff's termination – was aware that Plaintiff had engaged in alleged protected activity, because he was not. Even if he were aware, the intervening discovery of Plaintiff's policy violations related to promising perpetual naming rights in exchange for a revocable, deferred gift sever any causal tie between Plaintiff's protected activity and his termination from employment. ***Third***, Defendants articulated a legitimate non-discriminatory and non-retaliatory reason for terminating Plaintiff's employment – namely, Miller's loss of faith in Plaintiff's ability to exercise professional judgment and to engage in internal and external communication on behalf of the University. ***Lastly,*** for many of the same reasons that Plaintiff cannot demonstrate a *prima facie* case, Plaintiff cannot prove that Defendants' reason for terminating his employment was pretext for age discrimination or retaliation. The issues listed in Plaintiff's termination letter are well-documented.  Plaintiff may quibble with reasons supporting Miller's finding of a loss of faith, but none of these arguments suffices to establish pretext.

### A.  *Plaintiff cannot establish a* **prima facie** *case of age discrimination.*

To demonstrate a *prima facie* case of age discrimination, a plaintiff bears the burden of demonstrating that he: (1) is at least forty years old; (2) suffered an adverse employment decision; (3) was qualified for the position in question; and (4) "was ultimately replaced by another employee who was sufficiently younger so as to support an inference of a discriminatory motive." *Willis*, 808 F.3d at 644. While a plaintiff may support the fourth element of a *prima facie* case with evidence of similarly situated employees being treated more favorably than himself (often referred to as "comparators"), the "plaintiff has the burden of demonstrating that similarly situated persons were treated differently." *Simpson v. Kay Jewelers*, 142 F.3d 639, 646 (3d Cir. 1998).

Plaintiff cannot satisfy the fourth element to meet his burden. As an initial matter, Plaintiff was not replaced by *any* employee, much less one "who was sufficiently younger so as to support

an inference of a discriminatory motive." SMF ¶ 176. Plaintiff cannot resolve this deficiency through comparator evidence because none exists.

(i)    <u>Plaintiff cannot demonstrate with record evidence that Krebs and Viers are his comparators.</u>

"Context matters" in a similarly situated analysis, and in the context of "workplace disciplinary and/or personnel actions," a relevant factor is whether the individuals "had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *McCullers v. Napolitano*, 427 F. App'x 190, 195 (3d Cir. 2011) (internal citation omitted). Violations of policy or other offenses must be of "comparable seriousness" for employees to be a plaintiff's comparators. *Opsatnik v. Norfolk S. Corp.*, 335 F. App'x 220, 223 (3d Cir. 2009) (internal citation omitted).

Miller terminated Plaintiff because he lost faith in Plaintiff's "professional judgment and effective internal and external engagement abilities," SMF ¶ 175, after an egregious policy violation became the final straw in a series of lapses in judgment. Plaintiff's comparators would be individuals who engaged in similar conduct of "comparable seriousness," *Opsatnik*, 335 F. App'x at 223, relating to a gift officer's professional judgment and engagement abilities.

Plaintiff only identified Viers and Krebs in his discovery responses and at his deposition as younger employees who were treated more favorably by Miller, the only individual he accuses of age discrimination and retaliation. SMF ¶¶ 201-22. Plaintiff points to his HR complaint relating to Krebs' contact of Donor A in support of his argument that Krebs and Viers are appropriate comparators, but that assertion fails as to both. As to Viers, Plaintiff has adduced no evidence of similar conduct whatsoever. Plaintiff included Viers merely because he supervised Krebs – nothing more. SMF ¶ 96. Plaintiff did not allege specific conduct by Viers at any point. *See* SMF ¶ 118.

- 7 -

There is no other record evidence of even allegations made regarding similar conduct by Viers, much less misconduct. Accordingly, Viers cannot be Plaintiff's comparator.

Plaintiff claims that Krebs is his comparator based on his subjective view that Krebs lied in violation of Duquesne policy. It is undisputed that Human Resources found that Krebs did not violate any Duquesne policy after investigating Plaintiff's complaint, only concluding that her statement was "misleading" and recommended informal coaching to ensure there was no confusion, and that this recommendation was accepted by the Provost. SMF ¶¶ 116, 120. To suggest Krebs should have been formally punished implies that Human Resources' investigation was inadequate, but "[i]t is well-recognized that the fact that a company conducted an inadequate investigation of employee misconduct . . . without more, is not sufficient to raise an inference of discrimination." *Epps v. First Energy Nuclear Operating Co.*, No. 11-1462, 2013 U.S. Dist. LEXIS 41140, at *29 (W.D. Pa. Mar. 25, 2013). Accordingly, Krebs committed no misconduct for the University to punish, in stark contrast to Plaintiff.

Importantly, Krebs's conduct and its impact are not comparable to Plaintiff's policy violation regarding the Donor Couple. Krebs' alleged misstep was a statement in an email to Donor A that implied she spoke to Plaintiff when she was referring to what she learned from Plaintiff's contact reports. SMF ¶¶ 78-79. Plaintiff never spoke to Donor A after Krebs outreach, SMF ¶ 69, and cannot identify any complaint made by Donor A about Krebs, because none exists.

Plaintiff, on the other hand, promised important University donors that they could ***name*** a university-wide center in exchange for a ***revocable, deferred gift*** that did not meet threshold requirements and was never approved by the Gift Acceptance Committee or the President, in violation of the Gift Policies. *See* SMF ¶¶ 127, 151-58, 172. Plaintiff's violation required

University officials to inform the Donor Couple of the error, "devastat[ing]" Donor D and damaging the University's relationship with the Donor Couple. SMF ¶ 173.

Lastly, there is no record evidence that Krebs and Viers were subject to discipline at Duquesne prior to Plaintiff's complaint or at any point thereafter, because they were not. Accordingly, for this reason as well, their employment histories constitute a "differentiating or mitigating circumstance[]" that justifies any different treatment between the two, as it is undisputed that Plaintiff had prior conduct issues as described above. *See McCullers*, 427 F. App'x at 195.

In short: Krebs has never been found in violation of any policy, much less one of comparable seriousness to Plaintiff's final policy violation, and her prior employment history differentiates her from Plaintiff. Krebs is not Plaintiff's comparator as a matter of law, and, as discussed above, neither is Viers.

(ii)   <u>Plaintiff's proffered comparator evidence does not support an inference of discriminatory motive.</u>

Even if Krebs or Viers were Plaintiff's comparators, undisputed record evidence makes clear that any comparator evidence does not support an inference of discrimination for three reasons: (1) if Plaintiff has *any* comparator, it is Dean, a woman the *same age as him*; (2) any purported favorable treatment is unrelated to the reason for Plaintiff's termination; and (3) the record is devoid of *any* evidence of discriminatory animus.

While a single member of a non-protected group being treated more favorably may be relevant, "the evidence cannot be viewed in a vacuum," and "[a] decision adversely affecting an older employee does not become a discriminatory decision merely because one younger employee is treated differently." *Simpson*, 142 F.3d at 645-46. "[T]o hold otherwise would be to permit the inference of discrimination any time a single member of a non-protected group was allegedly

treated more favorably than one member of the protected group, regardless of how many other members of the non-protected group were treated equally or less favorably." *Id.* at 646.

Plaintiff asks this Court to view his proffered comparators in a vacuum, because viewed in context, it is clear that Plaintiff cannot make out an inference of discrimination for a *prima facie* case. First, the record reflects only *one* person other than Plaintiff who was found in violation of the Gift Policies: Dean, who, despite being the same age as Plaintiff, was not terminated for her involvement. *See* SMF ¶¶ 181-82. Indeed, same as Plaintiff, her punishment was tailored to her involvement and her prior history with Duquesne – which included no documented concerns regarding her professional judgment, unlike Plaintiff.

The only favorable treatment Plaintiff identifies aside from Duquesne not punishing Krebs is favorable donor assignments. Even if there were some indicia of favorable treatment – there is not, and even Plaintiff admits reassignments of "certain donors" were not based on age or any complaints had made, SMF ¶ 54 – it would not be relevant. *See Simpson*, 142 F.3d at 647 (holding that in a similar situated analysis, "the focus is on the particular criteria or qualifications identified by the employer as the reason for the adverse action.").

Lastly, the record in this case is devoid of any indicia of discriminatory animus. Miller was 57 years old, less than six years younger than Plaintiff. SMF ¶ 6. Plaintiff admits he never heard Miller make comments related to his age, and that Miller told him not to retire. SMF ¶¶ 50-51, 178. Plaintiff's sole reference during his employment to concerns of age discrimination related to not getting credit for Donor A's gift. *See* Ex. 30 at Duquesne_00166.

At bottom, Plaintiff's entire age-discrimination case is based on his disagreement with Human Resources' conclusion that Krebs did not commit a policy violation and that Krebs and Viers were given better donor assignments, including from his portfolio. A holistic view of the

undisputed record demonstrates that Plaintiff cannot establish an inference of age discrimination, meaning his claim should be dismissed for failure to present a *prima facie* case.[4]

### B.    Plaintiff cannot satisfy the **prima facie** *burden for his retaliation claim.*

To state a *prima facie* case of retaliation, Plaintiff must show: (1) he engaged in protected activity; (2) he suffered an adverse employment action either after or contemporaneously with that protected activity; and (3) a causal connection exists between his protected activity and the adverse action. *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015). There is no causal connection between any alleged complaint of age discrimination and Plaintiff's termination.

Plaintiff first made reference to age discrimination in his May 15, 2022 complaint disputing Krebs' attempts to receive credit for the gift she secured from Donor A.[5] *See* Ex. 30 at Duquesne_00166. He was terminated over two months later after a stunning and significant intervening event. SMF ¶¶ 174-75. Plaintiff has adduced no evidence of retaliatory animus – indeed, he admits he never heard Miller speak about his complaints, much less his reference to age discrimination, SMF ¶ 180 – and his retaliation claim is supported by nothing more than the proximity between his complaint and his termination. However, to prove causation relying solely on temporal proximity, "the timing of the alleged retaliatory action must be unusually suggestive of retaliatory motive before a causal link will be inferred." *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 331 (3d Cir. 2015). Indeed, "[w]hile the passage of mere hours or days has been deemed unusually suggestive, courts have held that the passage of weeks, months, and years removes any

---

[4]    Plaintiff claims work culture was "toxic" under Miller and made employees leave in "droves." SMF ¶¶ 203-04. Importantly, *half* of the individuals he named – *and the only two to leave after Miller took charge* – were not of protected age when they left. *See* SMF ¶¶ 205-07. At most, Plaintiff has established an indiscriminately difficult place to work, not a regime bent on disfavoring older employees.

[5]    Plaintiff never actually filed a complaint of age discrimination with Duquesne. His reference to age discrimination in the May 15, 2022 complaint is, more or less, a footnote to his actual complaint, and Defendants do not concede that Plaintiff's reference constitutes protected activity.

suggestion of retaliatory motive." *Shenk v. Pa.*, No. 11-1238, 2013 U.S. Dist. LEXIS 67495, at *21-22 (M.D. Pa. May 13, 2013).[6] Even if two months were unusually suggestive – it is not – other record evidence negates any inference established by the timing. *See McLaughlin v. Fisher*, 277 F. App'x 207, 219 (3d Cir. 2008) (holding roughly one-month gap insufficient to suggest causation where evidence negated any inference of retaliation). Plaintiff cannot clear two key hurdles to establishing a causal link: (1) Miller was unaware of Plaintiff's reference to age discrimination; and (2) Plaintiff's intervening policy violation breaks any inference of retaliation.

Crucially, Miller was not aware of Plaintiff's reference to age discrimination in the May 15, 2022 email. Plaintiff cannot reasonably claim that Miller retaliated against him for engaging in alleged protected activity when Miller was not *aware* of the protected activity. *See Ambrose v. Twp. of Robinson, Pa.*, 303 F.3d 488, 493 (3d Cir. 2002) ("It is only intuitive that for protected conduct to be a substantial or motiving factor in a decision, the decisionmakers must be aware of the protected conduct."). Indeed, "[i]t is axiomatic that there can be no retaliation without knowledge." *Bleiler v. Doylestown Hosp.*, No. 14-2308, 2015 U.S. Dist. LEXIS 114306, at *15 (E.D. Pa. Aug. 28, 2015) (granting summary judgment on retaliation claim and collecting cases). Miller's lack of knowledge of Plaintiff's protected activity sinks Plaintiff's retaliation claim.

Even if Miller were aware of Plaintiff's alleged protected activity, Plaintiff's egregious policy violations related to the Donor Couple constitute an intervening event that severs any link between Plaintiff's protected activity and his termination. "[W]hen a 'significant intervening event' separates an employee's protected conduct from his discharge, that event severs any temporal link." *Resch v. Sugarhouse HSP Gaming, L.P.*, No. 2:21-0042, 2022 U.S. Dist. LEXIS

---

[6]  *See also Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004) (two-month gap insufficient to establish *prima facie* case of retaliation); *Thomas v. Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) (three-week gap insufficient).

162686, at *13 (E.D. Pa. Sep. 9, 2022) (internal citations omitted).[7] Any other rule "would result in an employer's complete inability to terminate a problematic employee if that employee happened to be engaged in protected activity." *Johnson*, 2015 U.S. Dist. LEXIS 25295 at *32.

In late July 2022, Defendants discovered the revocable, deferred nature of the Donor Couple's DSCI as well as Plaintiff's purported unilateral immediate grant of naming rights to a university-wide center to the Donor Couple, without approval of the Gift Acceptance Committee and the President. SMF ¶¶ 159-60. Human Resources promptly investigated the matter, in a thorough report, found policy violations by Plaintiff and Dean. SMF ¶ 172. This constitutes a significant intervening event, as it was a policy violation warranting punishment and, in the case of Plaintiff given his past issues, termination.

Plaintiff clings to temporal proximity that is not unusually suggestive as the sole support for his retaliation claim. He adduced no evidence of retaliatory animus, he has not demonstrated Miller's knowledge of any protected activity, and no record evidence supports the notion that the cause of his termination was retaliation rather than the intervening discovery of his serious policy violations. He cannot establish a causal link between his protected activity and his termination and thus cannot demonstrate a *prima facie* case of retaliation. His claim should be dismissed.

### C.     Plaintiff's termination was the result of Miller's loss of faith in Plaintiff's professional judgment and communication skills.

If Plaintiff clears the bar of a *prima facie* case on either his age discrimination or retaliation claims, Defendants have a "relatively light" burden of production of "introduc[ing] evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory [and

---

[7]     *See, e.g.*, *id.* at *13 (E.D. Pa. Sep. 9, 2022) (finding no *prima facie* case where plaintiff's performance errors separated plaintiff's protected conduct from his discharge); *Johnson v. NewCourtland, Inc.*, No. 13-4238, 2015 U.S. Dist. LEXIS 25295, at *30-32 (E.D. Pa. Mar. 3, 2015) (finding no *prima facie* case where plaintiff's misconduct was an intervening event).

nonretaliatory] reason for the unfavorable employment decision." *Baron v. Abbott Labs.*, 672 F. App'x 158, 161 (3d Cir. 2016) (internal citations omitted). That burden is met.

When Miller stated he "lost faith in [Plaintiff's] professional judgment and effective internal and external engagement abilities" due to a "pattern of performance" shown by Plaintiff, the University articulated a legitimate, non-discriminatory reason for his termination. *See Ma v. Westinghouse Elec. Co., LLC*, No. 2:11-970, 2013 U.S. Dist. LEXIS 59811, *18 (W.D. Pa. Apr. 26, 2013) (loss of trust and confidence is a legitimate reason for termination).[8] The undisputed record reflects Miller's stated reasons, because Plaintiff: (1) demonstrated "poor judgment" – his words – in texting a picture of a woman in a bikini to the second-ranking employee of Duquesne, resulting in a formal written warning; (2) contributed to a mathematical error in a donor agreement that resulted in a shortfall of tens of thousands of dollars for students' scholarships; (3) failed for months to rectify the error by contacting the donors, despite being repeatedly asked to do so; (4) on multiple occasions demonstrated poor communication and dispute-resolution skills with his colleagues; and (5) cultivated a revocable, deferred gift from the Donor Couple in exchange for naming rights without approval of the Gift Acceptance Committee and the President in contravention of Duquesne policies, fracturing the donor relationship. *See* SMF ¶¶ 15-46.

Defendants have more than met their "relatively light burden" to demonstrate that Miller had a legitimate, non-discriminatory reason for Plaintiff's termination.

### D. Plaintiff cannot prove that Defendants' reasons for terminating his employment were pretext for age discrimination or retaliation.

Given that Defendants have satisfied their burden of production, Plaintiff bears the ultimate burden of persuasion in proving that Defendants' proffered reasons were pretext for age

---

[8]   *See also Dowling v. Citizens Bank*, 295 F. App'x 499, 504 (3d Cir. 2008) (holding a supervisor's "loss of confidence" as a reason for termination was neither pretextual nor improper).

discrimination and retaliation. *Willis*, 808 F.3d at 644. "The burden is higher at the pretext stage" than the *prima facie* case stage. *Steele v. Pelmor Labs., Inc.*, No. 16-cv-3088, 2017 U.S. Dist. LEXIS 219380, *10 (E.D. Pa. Apr. 18, 2017) (internal citation omitted). To prove pretext, he must either: (1) show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons to satisfy the factfinder that the employer's actions could not have been for nondiscriminatory reasons," *id.* at 644-45; or (2) present evidence that allows a factfinder to determine that his age or involvement in protected activity was "more likely than not a 'but for' cause of the adverse employment action" *Abels v. Dish Network Serv., LLC,* 507 F. App'x 179, 184 (3d Cir. 2012) (applying the heightened "but for" causation standard to required pretext showing in ADEA discrimination context).[9] Under either method, Plaintiff's "evidence must allow a reasonable jury to find, by a preponderance of the evidence, that age discrimination [or retaliation] was a 'but-for' cause for the adverse employment action." *Id.* at 184.

At the pretext stage, "it is not a court's role to 'rule on the strength of cause for discharge. The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is discrimination [or retaliation].'" *Willis*, 808 F.3d at 647 (cleaned up).

i.  Under the first method, Plaintiff cannot establish that Miller's articulated reason for termination is "so weak as to render it 'unworthy of credence.'"

As to the first method of proving pretext, Plaintiff must show that Miller's "reason for discipline is so weak as to render it 'unworthy of credence.'" *Willis*, 808 F.3d at 647-48 (quoting *Fuentes*, 32 F.3d at 765). On the undisputed facts, Plaintiff cannot demonstrate *any* "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Miller's legitimate reason for

---

[9]    *See also Egan v. Del. River Port Auth.*, 851 F.3d 263, 272 (3d Cir. 2017) (noting that the "but for" causation standard applies to ADEA retaliation claims).

Plaintiff's termination from employment that render the decision "unworthy of credence," *id.*, particularly considering the heightened but-for standard that applies to this method, too, *Abels*, 507 F. App'x at 184. Generally, to discredit legitimate reasons for discipline, a plaintiff must "demonstrate that the discipline was 'so plainly wrong that it [could not] have been the employer's real reason.'" *Willis*, 808 F.3d at 648 (internal citation omitted). Indeed, "[t]o discredit the employer's proffered reason . . . the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Fuentes*, 32 F.3d at 765.

As stated above, Miller terminated Plaintiff due to a loss of faith in his professional judgment and communication abilities. Miller's decision was supported by several examples of issues during Plaintiff's employment, culminating in the biggest issue of them all, an improper grant of naming rights in exchange for a revocable, deferred gift in direct contravention to Duquesne's Gift Policies. Plaintiff cannot quibble with any of these examples, as they are supported by uncontroverted testimony and indisputable documentary evidence. Any challenge by Plaintiff in his opposition will, necessarily, be nothing more than an attempt to demonstrate that Miller's decision was "wrong or mistaken," but even if it were, Plaintiff would not have made the necessary showing to demonstrate pretext.[10] *Id.*

ii.   <u>Plaintiff cannot adduce evidence to demonstrate that his age was more likely than not the but-for cause of his termination from employment.</u>

As discussed above, Plaintiff cannot support an inference of discrimination, much less the

---

[10]   Defendants anticipate that Plaintiff will argue that Miller was a comparator. Miller is not an appropriate comparator because he was in a different position than Richter, is not accused of similar policy violations, and was not identified by Plaintiff as a comparator during his deposition or in written discovery, only now being brought up out of desperation. In any event, any evidence Plaintiff attempts to introduce is not relevant and inadmissible, and Defendants intend to object to its inclusion pursuant to Federal Rule of Civil Procedure 56(c)(2).

heightened standard for demonstrating pretext. *See Steele*, 2017 U.S. Dist. LEXIS 219380, at *10.

At the outset, Miller's age cuts against any pretext finding. Miller was 57 years old at the time of Plaintiff's termination, only six years younger than Plaintiff. SMF ¶ 6. Miller's status in the same protected age class as Plaintiff, and of close similar ages, significantly discredits Plaintiff's claim. *See Elwell v. PP&L, Inc.*, 47 F. App'x 183, 189 (3d Cir. 2002) (affirming summary judgment in age discrimination claim, finding that the fact that the decision-maker was 50 years of age at the time of the decision weakened plaintiff's claims); *Umbria v. Valley Forge Casino Resort*, No. 21-1718, 2022 U.S. Dist. LEXIS 29371, at *11 (E.D. Pa. Feb. 18, 2022) (granting summary judgment in age discrimination claim, finding that the fact that relevant decision-maker was over 40 and only 8 years younger weakened plaintiff's claims).

Plaintiff's age discrimination claims are further discredited by the fact that Duquesne hired Plaintiff when he was 55 and promoted him at age 60, only two-and-a-half years prior to his termination. SMF ¶¶ 7-10; *see Maidenbaum v. Bally's Park Place*, 870 F. Supp. 1254, 1267 n.24 (D.N.J. 1994) (noting that fact plaintiffs were over 40 when they were hired undermined age discrimination claims regarding termination over 10 years later because "[e]mployers who knowingly hire workers within a protected group seldom will be credible targets for charges of pretextual firings") (internal citations and quotations omitted), *aff'd* 67 F.3d 291 (3d Cir. 1995); *Sbarbaro v. Regulatory DataCorp, Inc.*, No. 16-4887, 2018 U.S. Dist. LEXIS 15534, at *23 (E.D. Pa. Jan. 26, 2018) ("It is not reasonable to infer that knowing plaintiff's age at the time of her hiring, [defendant] terminated her based on her age less than six months later."). On top of Plaintiff's hire and promotion, Plaintiff offered to Miller to retire less than a year prior to his termination, and, again, knowing Plaintiff was of protected age, Miller rejected the offer because, in Plaintiff's own words, Miller "did not want [him] to leave the University" and then created a

new position for him to allow Plaintiff to stay. SMF ¶¶ 50-51.

As discussed at length above, Plaintiff will not be able to establish that Krebs and Viers are his comparators for purposes of his termination, and the record is devoid of discriminatory animus and any evidence tying any allegedly improper actions to age. Plaintiff's theory that others were treated more favorably due to his age is, at best, based on nothing more than his own opinion and conjecture – which is insufficient to prove pretext and survive summary judgement. *See Ade v. KidsPeace Corp*., 401 F. App'x 697, 703 (3d Cir. 2010) (affirming summary judgment and noting that a plaintiff's "own personal belief that the true reason for the discharge was . . . discrimination is . . . insufficient to create a genuine issue of material fact").

        iii.    <u>Plaintiff cannot adduce evidence to demonstrate that his protected activity was more likely than not the but-for cause of his termination from employment.</u>

To overcome Defendants' legitimate, nondiscriminatory reason for termination as to his retaliation claim, Plaintiff must establish that it is more likely than not that Miller would not have terminated his employment but for his protected activity. *See Abels,* 507 F. App'x at 184. Again, Plaintiff cannot meet this heightened standard for the same reasons he cannot meet the burden for a *prima facie* case of retaliation.

Plaintiff likely will lean on the temporal proximity, but the two-month gap between his protected activity and his termination is not unusually suggestive of retaliation. Temporal proximity as evidence of retaliation is cut down further by the undisputed facts that Miller had no knowledge of the protected activity and, even if he did, the intervening policy violations that precipitated his termination sever any causal ties between the protected activity and his termination two months later.

Much like with his age claim, it is telling that Plaintiff has adduced no evidence indicative

of retaliatory animus – because there is none. Plaintiff admits he never heard Miller complain of Miller's protected activity or his broader complaints. SMF ¶ 180. And, as with age, Plaintiff admitted on several occasions in his deposition that he did not believe certain actions were taken to his detriment due to complaints he made – indeed, in several instances, the actions preceded or even were the catalyst for the complaints. SMF ¶¶ 24, 45, 54, 80.

At bottom, Plaintiff was dismissed after discovery of his serious policy violations were the final straw in breaking the eroding trust Miller had in Plaintiff's ability to exercise good judgment and to communicate appropriately. Plaintiff was dismissed on that basis, and he will not be able to demonstrate that basis was pretextual, because it was not.[11]

### E.  Plaintiff's recovery should be limited by the after-acquired evidence doctrine.

If any of Plaintiff's claims survive summary judgment – and they should not – Plaintiff's recovery should be limited by the after-acquired evidence doctrine, as Defendants discovered numerous emails that divulged confidential donor information to unauthorized individuals, an offense for which Duquesne has terminated an employee previously.

When an employer discovers that the terminated employee committed acts while employed warranting the employee's termination, the after-acquired evidence defense operates to severely limit the employee's potential damages. *McKennon v. Nashville Banner Publ. Co.*, 513 U.S. 352, 354 (1995). "[N]either reinstatement nor front pay is an appropriate remedy," and back pay should

---

[11]  Should this Court conclude any of Plaintiff's claims survives as to Duquesne, summary judgment should be granted with respect to Miller, and he should be dismissed from the case. The ADEA does not provide for liability as to individual defendants. *See Hill v. Borough of Kutztown*, 455 F.3d 225, 246 n. 29 (3d Cir. 2006). While the PHRA *does* allow for individual liability under an "aiding and abetting/accomplice liability theory," *Nicholson v. Sheetz Inc.*, No. 1:19-166, 2020 U.S. Dist. LEXIS 144843, at *14-15 (W.D. Pa. Aug. 12, 2020), such claims are not appropriate when the individual defendant is alleged only to have engaged in direct acts of discrimination, in contrast to those who stand by while discrimination occurs or otherwise aid and abet discrimination perpetrated by others. *See Dici v. Pa.*, 91 F.3d 542, 552-53 (3d Cir. 1996) (affirming summary judgment as to an individual defendant who only engaged in direct acts of discrimination). Plaintiff does not allege that Miller sat idly by while discrimination occurred; he alleges that Miller was the perpetrator who terminated him due to his age or for engaging in protected activity. *See* SMF ¶ 201. All claims against Miller should be dismissed.

be limited to, at most, "the date the new information was discovered." *McKennon*, 513 U.S. at 361-62; *see, e.g. Nesselrotte v. Allegheny Energy, Inc.*, 615 F. Supp. 2d 397, 406 (W.D. Pa. 2009) (precluding potential damages after the point of discovery); *Ryder v. Westinghouse Elec. Corp.*, 879 F. Supp. 534, 537 (W.D. Pa. 1995) (same).

The requisite evidentiary showing to support applying the after-acquired evidence doctrine at summary judgment to limit employee recovery is evidence that demonstrates the employee's acknowledgement of the misconduct and testimony that the misconduct would be grounds for discharge. *See Bullock v. Balis & Co.*, No. 99-748, 2000 U.S. Dist. LEXIS 18207 (E.D. Pa. Dec. 18, 2000). An employer may also support application of the doctrine by demonstrating that another employee was terminated for the same conduct. *See Nesselrotte*, 615 F. Supp. 2d at 406.

As part of his job as a gift officer, Plaintiff knew donor information was confidential. SMF ¶¶ 187-88, 190. During this litigation, Duquesne discovered several emails that Plaintiff admits divulged confidential donor information to unauthorized parties on February 24, 2024. *See* SMF ¶¶ 192-95.  Duquesne near-immediately terminated the individual behind the only known instance of divulging confidential donor information to individuals outside of Duquesne. *See* SMF ¶¶ 197-99.  Duquesne would have done the same if Plaintiff were still employed when these emails were discovered.  *See* SMF ¶ 200. Plaintiff has not entered any evidence to refute that notion.

If any claim survives summary judgment, Defendants respectfully request that Plaintiff be precluded from seeking reinstatement or front pay and that Plaintiff's potential to recover back pay be limited to wages up through February 24, 2024.

### III.    CONCLUSION

For the reasons set forth above, Defendants respectfully request that their Motion for Summary Judgment be granted in its entirety and that all claims be dismissed.

Respectfully submitted,

_/s/ Mariah H. McGrogan_
Mariah H. McGrogan (Pa. ID 318488)
Joshua R. Sallmen (Pa. ID 325948)
REED SMITH LLP
225 Fifth Avenue
Pittsburgh, PA 15222
Telephone:  (412) 288-3152/5446
Facsimile:   (412) 288-3063
E-mail:      mmcgrogan@reedsmith.com
             jsallmen@reedsmith.com

_Counsel for Defendants_

Dated:  April 23, 2024