IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM RICHTER,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>DUQUESNE UNIVERSITY OF THE HOLY SPIRIT, and JAMES MILLER, as an aider and abettor of discrimination,<br><br>　　　　　　　Defendants. | Civil Action No. 2:23-cv-00550-CCW |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Faced with no evidence supporting discrimination or retaliation, Plaintiff flooded the Court with misapplications of the law and irrelevant, scandalous allegations. This effort failed to create a genuine dispute as to the facts that matter:

- Defendant Miller terminated Plaintiff due to a loss of trust onset by performance and conduct issues. The final straw, agreeing to naming rights of a major University asset without proper approval, was a stunning error on its face, *see infra* Section II; Defendants' Memorandum in Support of Motion for Summary Judgment ("Mem.") 13-14.
- There is no record evidence that Duquesne exhibited animus regarding his age or his alleged protected activity, *see* Mem. 9-10; *see also* Defendants' Reply to Plaintiff's Counter Statement of Material Facts ("CSMF Reply") ¶¶ 50-51; and
- Plaintiff offered the Court no similarly situated comparators who engaged in a similar stunning naming error, as a matter of fact or law, *see infra* Section I; Mem. 7-9.

Looking past the desperate and irrelevant allegations, this is a straightforward case revolving around a clear-cut termination. Plaintiff's mounting employment issues reached a point of no return when he violated University policy. It remains undisputed that Plaintiff caused donors to sign a gift agreement which promised to name a major University-wide center based on a speculative gift that could be revoked at will, without getting approval of the appropriate committee and the President. Plaintiff's stunning error ruptured a relationship between an alum and the University, upsetting and angering that donor because of his conduct and his misplaced representations. Plaintiff then refused to meaningfully participate in the investigation or to accept responsibility for his conduct. This culminating event, in light of Plaintiff's history, caused his supervisor to lose faith in his professional judgment and led to his termination. Summary judgment is warranted. [1]

---

[1] If any claim survives, Plaintiff's recovery should be limited by the after-acquired evidence doctrine. *See* Mem. 19-20. Plaintiff relied only on an out of-court settlement in a lawsuit filed by Cecilia Hughes – who was also terminated for sharing confidential information – and his own speculation. *See* Reply to CSMF ¶¶ 187-93, 195, 197, 199. Neither is sufficient to create a genuine dispute of fact. It remains undisputed that Duquesne terminated the only individual caught improperly disclosing confidential donor information during her employment. *See* CSMF Reply ¶ 194.

I.       **Plaintiff Failed to Identify a Legally Relevant Comparator**

Plaintiff failed to carry his burden of identifying similarly situated comparators who engaged in conduct similar to his stunning error to make out a *prima facie* case of discrimination or retaliation. Mem. 6-13. Plaintiff identified Melissa Krebs as a comparator, arguing that she was accused of a misleading statement and was not punished. *See* Mem. 7-9,[2] Opp. 4-5. This argument fails as a matter of law for several reasons. First, Krebs' alleged misleading statement was not similar conduct to Plaintiff's conduct – *i.e.* his unauthorized immediate and perpetual naming of a University asset without authorization in violation of policy. Second, the undisputed facts demonstrate that Duquesne thoroughly investigated Krebs' alleged misleading statement and found no policy violation. *See* CSMF Reply ¶¶ 115-20. It is axiomatic that courts do not "second-guess" the outcome of an investigation absent proof of unlawful motive. *See infra* Section II.

Plaintiff also asserts that his former third-level supervisor Miller is an appropriate comparator. However, Plaintiff did not name Miller as a comparator in his Complaint, discovery responses, or deposition, *see* CSMF Reply ¶ 202,[3] and should not be able to "switch horses mid race and use [Miller] as [a] comparator," as doing so is tantamount to "chang[ing] or creat[ing] new claims in his response to a summary judgment motion." *Minnifield v. City of Birmingham*, No. 2:14-cv-789, 2015 U.S. Dist. LEXIS 130005, at *19 (N.D. Ala. Sept. 28, 2015).[4] Regardless,

---

[2] Plaintiff did not argue that Viers was a comparator in his Opposition, waiving any such argument. *See Walsh v. Japanese Fusion Steakhouse, Inc.*, 548 F. Supp. 3d 513, 522 (W.D. Pa. 2021) (Wiegand, J.) ("A party that fails to address an argument in its brief in opposition . . . waives that argument.").

[3] Plaintiff's assertion that he only learned of Miller's alleged misconduct during discovery fails because during his deposition, Plaintiff proffered only Krebs and Viers as comparators **and** accused Miller of the misconduct he alleges herein. *See* CSMF Reply ¶ 202. Nevertheless, this purported delay does not mitigate Plaintiff's obligation under the Federal Rules of Civil Procedure to supplement his discovery responses during discovery. Fed. R. Civ. P. 26(e).

[4] *See Boatright v. U.S. Bancorp*, No. 18-cv-7293 (LJL), 2020 U.S. Dist. LEXIS 236604, at *37 n.2 (S.D.N.Y. Dec. 16, 2020) (holding "it is too late for [plaintiff] to raise" a new comparator after failing to do so in her complaint, discovery responses, and deposition); *see also Bell v. City of Phila.*, 275 F. App'x 157, 160 (3d Cir. 2008) (plaintiff may not raise new claims in a summary judgment opposition); *see also Diodato v. Wells Fargo Ins. Servs., USA, Inc.*, 44 F. Supp. 3d 541, 556-57 (M.D. Pa. 2014) (articulating new factual allegations in summary judgment opposition is an improper attempt to amend complaint).

as Plaintiff's third level supervisor and the termination decisionmaker, Miller is not an appropriate comparator. Courts routinely find that a plaintiff's supervisor is not his comparator because they hold different job responsibilities.[5] Similarly, as a matter of law, a supervisor/decisionmaker is not a valid comparator because a key factor in the analysis is whether there was discrimination in the disciplinary decisions made by the supervisor/decisionmaker.[6]

Finally, Plaintiff's focus on allegations of dubious evidentiary quality relating to alleged sexual conduct is a gross and immaterial misuse of serious claims which he chose not to raise until he believed that it might benefit his quest for pecuniary gain. To be clear, *one* former employee claims that she reported her concerns fourteen years after they allegedly occurred.[7] Unlike that report, Plaintiff's sexual misconduct – the admitted sending of inappropriate text messages to the University Executive Vice President and Provost – was reported immediately, investigated, and admitted to by Plaintiff. Plaintiff's conduct was particularly egregious because he sent the texts to the University's Provost, and this was merely *one* brick in the wall of performance and conduct issues that led to his termination. For all of these reasons, as a matter of law, Miller is not a relevant comparator.

---

[5] *See, e.g.*, *Monaco v. Am. Gen. Assur. Co.*, 359 F.3d 296, 305-06 (3d Cir. 2004); *Langley v. UPS Inc.*, No. 21-2962, 2023 U.S. App. LEXIS 2525, at *11-12 (3d Cir. Feb. 1, 2023); *Kochka v. W. Penn Allegheny Health Sys.*, No. 2:21-cv-01349, 2023 U.S. Dist. LEXIS 203334, at *8-9 (W.D. Pa. Nov. 14, 2023) (Wiegand, J.) (holding on motion in *limine* the fact that plaintiff and supervisor "held different positions and performed different job duties "alone render[ed]" them "not similarly situated").

[6] *See, e.g.*, *Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 882 (3d Cir. 2011) (despite similar misconduct, plaintiff's superior was not comparator because "it was the discretion of a different supervisor not to terminate her"); *Kochka*, 2023 U.S. Dist. LEXIS 203334, at *11 ("[w]here employees are disciplined by different supervisors or decision-makers the employees are not similarly situated").

[7] Plaintiff's claim of "multiple female employees" asserting sexual misconduct by Miller is just that – a claim, and one without admissible evidence. *See* CSMF Reply ¶¶ 240-41, 290.  There is no record evidence that any other woman's assertions were brought to Duquesne's attention, *see id.*, because they were not.

## II. Quarrels with Good Faith Investigations and Decisions Do Not Show Pretext

Plaintiff was terminated due to Miller losing trust in his abilities, which was supported by Plaintiff's stunning final error, and his past poor judgment and conduct.[8] He attempts to quarrel with his history, but his efforts simply ask this Court to second-guess Duquesne's decisions over a period of several years. Such second-guessing does not demonstrate pretext. *See Brewer v. Quaker State Oil Ref. Co.*, 72 F.3d 326, 332 (3d Cir. 1995) (courts "do not sit as a super-personnel department that reexamines an entity's business decisions."); "The only inquiry is whether the decisionmaker[] . . . at the time of his decision, honestly believed" that the subject of the investigation "had violated the company's policy at issue." *Garvin v. Progressive Cas. Ins. Co.*, No. 5:08-cv-3758, 2010 U.S. Dist. LEXIS 46524, at *20 (E.D. Pa. May 10, 2010).

Each reason stated by Miller for terminating Plaintiff has undisputed factual support, and Plaintiff's arguments do not hold water. Undisputed facts confirm that Plaintiff violated Duquesne's policies related to accepting gifts and granting naming rights. *Id.* ¶ 172. Despite knowing the gift needed to go before the Gift Acceptance Committee and the President prior to the execution of the DCSI, Plaintiff caused the Donor Couple and Dean to sign the DSCI. The DSCI unequivocally provided the Donor Couple naming rights to a University-wide center when the Donor Couple provided "documentation of the proposed gift," which Plaintiff admits the Donor Couple did, in exchange for a fully deferred, revocable bequest that could be rendered null and void at any time. *See id.* ¶¶ 156-57. Based on these same facts discovered through the investigation, the investigator found that Plaintiff (and a colleague) violated the policies. CSMF Reply ¶ 172. Plaintiff has adduced no evidence to question whether the investigation's conclusions

---

[8] Plaintiff did not dispute that Defendants had a legitimate, nondiscriminatory reason for his termination and thus has waived the issue. *See Walsh*, 548 F. Supp. 3d at 522; *Campbell v. Jefferson Univ. Physicians*, 22 F. Supp. 3d 478, 487 (E.D. Pa. 2014). Similarly, Plaintiff did not rebut Defendants' argument that Miller is not a proper individual Defendant to this case, and waived this issue. Miller should be dismissed as a matter of law. *See* Mem. 19 n.11.

were based on an honest belief, meaning that, even if the investigator was mistaken, it would not demonstrate pretext.[9] *See Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994).

With respect to Plaintiff's history before his stunning culminating error, his past discipline resulting from his misconduct in sending a senior university official sexually inappropriate texts was just one piece of his history. Tellingly, Plaintiff admitted to his error in judgment, acknowledged at the time that his behavior was inexcusable, and accepted the discipline. CSMF Reply ¶¶ 19-20. Plaintiff's salacious, untrue allegations about Miller, and references to long ago lawsuits involving President Gormley are irrelevant, wildly dissimilar to the relevant facts at hand, and serve no purpose but to attempt to distract from the lack of evidence of discrimination or retaliation. As a matter of law, neither Miller nor Gormley is Plaintiff's comparator. These unsubstantiated allegations do not somehow absolve Plaintiff of his past, admitted sexual misconduct policy violation and resulting discipline by a prior manager, John Plante.[10] Regardless, most, if not all, of Plaintiff's assertions lack the support of admissible evidence.[11]

---

[9] Plaintiff makes several immaterial attempts to poke at the earnestness of the investigation and resultant findings. First, Plaintiff claims, through Rick Creehan (former Duquesne employee) that the policies were not consistently followed. Creehan has no firsthand experience of Miller's leadership and his enforcement of the policies at issue, *see* CSMF Reply ¶¶ 132, 206, rendering his opinion immaterial. *See Rojas v. Florida*, 285 F.3d 1339, 1343 (11th Cir. 2002); *accord Maiorini v. Farmers Ins. Exch.*, No. 14-1613, 2017 U.S. Dist. LEXIS 47471, at *125-26 (E.D. Pa. Mar. 30, 2017). Second, Plaintiff's assertions that Miller knew all the details of the gift are not only wrong but immaterial, because that point was raised during, and factored into, the investigation. *See* Def'ts' Ex. 45 at Duquesne_00007. Without producing evidence of illegal intent, Plaintiff improperly attempts to reopen an investigation that has been closed for almost two years. *Money v. Provident Mut. Life Ins. Co.*, 189 F. App'x 114, 116-17 (3d Cir. 2006) (a "naked credibility attack" on a pre-termination investigation does not create inference of pretext). Lastly, Plaintiff asserts that Dean's culpability level is a question of fact for a jury. Opp. 4-5. Aside from Plaintiff again relitigating a legitimate investigation, Dean is Plaintiff's age and had previously engaged in her own protected activity while also assisting Plaintiff with his complaint. CSMF Reply ¶ 181. Dean's lesser punishment cannot suggest pretext for age discrimination or retaliation as it shows employees who are Plaintiff's age and engage in protected activity are treated fairly based on the University's good faith assessment of their culpability level.

[10] Plaintiff misquotes his termination letter as listing "egregious sexual misconduct." CSMF ¶ 303. Miller actually referred to the inappropriate texting as "egregious behavior" related to "sexual misconduct." *Id.*. In other words, Plaintiff's choice to message sexual content to the Executive Vice President and Provost of a Catholic institution was an egregious lapse of judgment on top of being a policy violation.

[11] As to the other reasons listed in his termination letter, Plaintiff notes that he was never apprised of concerns related to these issues, but that fact is not material. *See Garcia v. Newtown Twp.*, 483 F. App'x 697, 705 n.24 (3d Cir. 2012); *see also Gladysiewski v. Energy*, No. 07-1339, 2009 U.S. Dist. LEXIS 111982, at *37 (W.D. Pa. Oct. 26, 2009).

                        Respectfully submitted,

                        */s/ Joshua R. Sallmen*
                        Mariah H. McGrogan (PA 318488)
                        Joshua R. Sallmen (PA 325948)
                        Reed Smith LLP
                        225 Fifth Avenue, Suite 1200
                        Pittsburgh, PA  15222
                        Phone:  (412) 288-3131
                        Email:   mmcgrogan@reedsmith.com
                                        jsallmen@reedsmith.com

Dated:  May 24, 2024                 *Attorney for Defendants*