IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WILLIAM RICHTER,

        Plaintiff,

     v.

DUQUESNE UNIVERSITY OF THE HOLY
SPIRIT AND JAMES MILLER,

        Defendants.

2:23-CV-00550-CCW

**OPINION**

Plaintiff William Richter claims that his former employer, Duquesne University of the

Holy Spirit, and his former Senior Department Head, James Miller, discriminated against him on

the basis of his age and retaliated against him for engaging in protected activity, all in violation of

the Age Discrimination in Employment Act ("ADEA") and the Pennsylvania Human Relations

Act ("PHRA").[1]  Defendants have moved for summary judgment on all claims.  ECF No. 34.  For

the following reasons, the Court will grant Defendants' Motion.

## I.    Material Facts

The following facts are drawn from the parties' consolidated factual statements and

responses, which appear at ECF No. 52, and are undisputed unless otherwise noted.

Duquesne University of the Holy Spirit is a private Catholic institution of higher education.

ECF No. 52 ¶ 1.  Through the University's Advancement Division, it secures private philanthropic

support by securing donations and planned gifts.  *Id.* ¶¶ 2–4.  Since July 2021, James Miller has

led the Advancement Division as its Senior Vice President.  *Id.* ¶ 5.  In September 2015, Duquesne

---

[1] The Court has federal question jurisdiction over the ADEA claims under 28 U.S.C. § 1331 and supplemental jurisdiction over the PHRA claims under 28 U.S.C. § 1367.

hired Mr. Richter as a Major Gift Officer in the Advancement Division. *Id.* ¶ 7. At the time, he was 55 years old. *Id.* ¶ 8. In January 2020, when Mr. Richter was 60 years old, he was promoted to Senior Major Gifts Officer. *Id.* ¶ 9. In November 2021, when he was 61 years old, Mr. Richter was given a new title—Senior Major and Gift Planning Officer—and he was given a new direct supervisor, Mary Frances Dean. *Id.* ¶ 10.

At some point in early 2022, University President Ken Gormley directed Mr. Miller to restructure the Advancement Division, including reviewing and rebalancing the gift officers' donor portfolios. *Id.* ¶ 53. At the time of this rebalancing, Mr. Richter had 431 donors in his portfolio which he agreed was too large. *Id.* ¶¶ 55, 56. As part of the rebalancing, Mr. Miller reassigned one of Mr. Richter's donors to Melissa Krebs, another gift officer in the Advancement Division. *Id.* ¶57. In March 2022, Ms. Krebs met with this donor and indicated to the donor that Mr. Richter "ha[d] shared some of [his] thoughts . . . with her" regarding his portfolio, which was not true. *Id.* ¶¶ 57, 72. That donor eventually made a $50,000 donation to the University. *Id.* ¶ 58. Mr. Richter believed, however, that the credit for this donation should go to him because Ms. Krebs "stole" the donor from him and falsely told the donor that she had spoken with him about the donor's profile. *Id.* ¶ 108.

On March 10, 2022, Mr. Richter complained to Mr. Miller about Ms. Krebs' actions regarding this donor, asserting that she lied to the donor about her interactions with Mr. Richter. *Id.* ¶¶ 71, 72. Mr. Miller later informed Mr. Richter of the donor reassignment and stated that Ms. Krebs had done nothing wrong. *Id.* ¶ 82. On April 1, 2022, Mr. Richter filed a formal complaint with the Human Resources Department regarding Ms. Krebs' conduct with the donor. *Id.* ¶ 86. He specifically alleged violations of university policies but did not mention age discrimination. *Id.* ¶¶ 87, 88, 90. On April 5, 2022, Jefferson Dedrick, Director of the Human Resources

Department, began investigating Mr. Richter's April 1 complaint.  *Id.* ¶¶ 88, 98, 111.  On May 15, 2022, during Mr. Dedrick's investigation, Mr. Richter filed a second complaint elaborating on his issues with Ms. Krebs.  *Id.* ¶ 110.  Neither complaint mentioned age discrimination.  *Id.* ¶¶ 97, 110.  Also on May 15, 2022, Mr. Richter sent an email to a human resources representative complaining about age discrimination because Ms. Krebs was receiving credit for the $50,000 donation from the donor originally assigned to Mr. Richter.  *Id.* ¶ 110.  There is no record of what subsequently happened with this email—nothing indicates that it was ever received, viewed, or discussed by Mr. Miller or Mr. Dedrick.[2]

As part of his investigation, Mr. Dedrick interviewed eight employees between April 5 and May 24, 2022.  *Id.* ¶ 111.  On May 16, 2022, Mr. Dedrick met with Mr. Miller to discuss Mr. Richter's two formal complaints.  ECF No. 50, Ex. 2 at 162–180.  Between May 24 and June 15, 2022, Mr. Dedrick conducted additional follow-up communications as part of the investigation.  ECF No. 52 ¶ 112.  On July 11, 2022, Mr. Dedrick released an Investigative Report recommending a finding of no policy violation as to Ms. Krebs' conduct.  *Id.* ¶ 115.  Mr. Dedrick's Investigative Report did not mention age discrimination.  ECF No. 50, Ex. 2 at 162–180.  On July 20, 2022, Mr. Dedrick shared his Investigative Report regarding Ms. Krebs' actions with Mr. Richter.  *Id.* ¶¶ 321, 322;  ECF No. 50, Ex. 2 at 162–180.  On August 2, 2022, Mr. Richter appealed Mr. Dedrick's conclusion but did not mention age discrimination.  ECF No. 52 ¶¶ 121–23.

During mid-March and April 2022, Mr. Richter was also working to secure a large gift from other donors in his portfolio.  ECF No. 52 ¶ 127.  Around this time, Mr. Richter and two donors (hereinafter, "Donor Couple") reached a non-binding oral understanding that the Donor Couple would make a deferred, revocable seven-figure gift in exchange for naming rights to a

---

[2] Although Mr. Richter asserts that Mr. Miller had a meeting with this human resources representative, *see* ECF No. 52 ¶ 321, as discussed below, nothing in the record supports this assertion.

university-wide building. *Id.* On May 13, 2022, a Donor Statement of Charitable Intent ("DSCI") was drafted to memorialize the parties' obligations. *Id.* ¶ 144. On June 22, 2022, the Donor Couple signed the DSCI, and on July 7, 2022, Mr. Richter's direct supervisor, Ms. Dean, signed it. *Id.* ¶¶ 149, 150. The DSCI provided that the Donor Couple would give $1.5 million to the University in exchange for naming rights to a university-wide center. *Id.* ¶¶ 156, 158, 272. The DSCI further affirmed that the "gift is revocable during [the Donor Couple's] lifetimes" and that it is entirely deferred until the Donor Couple's death. *Id.* ¶¶ 151, 153, 154. The DSCI provided, however, that the university-wide center would be renamed "[u]pon receipt of documentation of the proposed gift." *Id.* ¶ 156.

In violation of university policy, Mr. Richter never brought the gift and naming rights before the Gift Acceptance Committee or the University President, nor is he aware of anyone else who did. *Id.* ¶¶ 146–48. So, when University President Ken Gormley learned of the agreement, he was "shocked." *Id.* ¶ 159. Mr. Dedrick then opened an investigation into the DSCI with the Donor Couple and the circumstances surrounding it. *Id.* ¶ 161. Mr. Richter was placed on paid administrative leave pending the outcome of the investigation. *Id.* ¶ 171. On August 10, 2022, Mr. Dedrick issued an Investigative Report, finding that Mr. Richter violated two university policies—the Gift Acceptance Policies and the Naming Policy—because he solicited a 100% deferred, revocable gift that promised naming rights to a university-wide center in perpetuity without obtaining the necessary approvals from the Gift Acceptance Committee and the President. *Id.* ¶ 172. Although Mr. Richter agrees that Mr. Dedrick found violations of university policy, he denies that he violated any policy or did anything improper regarding the gift. *Id.*

On August 17, 2022, Mr. Miller terminated Mr. Richter's employment. *Id.* ¶¶ 14, 174, 322. Mr. Miller was the sole decision-maker in Mr. Richter's termination. ECF No. 52 ¶ 252.

The termination letter states that Mr. Richter is "being terminated because Miller 'lost faith in [Mr. Richter's] professional judgment and effective internal and external engagement abilities' and that violations of policy related to the Donor Couple were the final straw in a 'pattern of performance' that caused the loss of faith and warranted termination." *Id.* ¶ 175.

## II.      Legal Standard

To prevail on a motion for summary judgment, the moving party must establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is 'genuine' if the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A factual dispute is 'material' if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *NAACP v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (alteration omitted) (quoting *Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The burden to establish that there is no genuine dispute as to any material fact "remains with the moving party regardless of which party would have the burden of persuasion at trial." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996) (internal quotation marks omitted). Furthermore, "[i]f the non-moving party bears the burden of persuasion at trial, 'the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden.'" *Kaucher v. Cnty. Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (quoting *Wetzel v. Tucker*, 139 F.3d 380, 383 n.2 (3d Cir. 1998)).

Once the moving party has carried its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts…. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 586–87.  Thus, while "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor," *Anderson*, 477 U.S. at 255, "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings" and point to "'specific facts showing that there is a genuine issue for trial,'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (citation omitted).  But while the court must "view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor . . . to prevail on a motion for summary judgment, the non-moving party must present more than a mere scintilla of evidence…." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (internal citations omitted).  Instead, "there must be evidence on which the jury could reasonably find for the non-movant." *Id.* (cleaned up).

### III.    Discussion

Mr. Richter asserts that Defendants discriminated against him based on his age when it terminated his employment on August 17, 2022.  ECF No. 48.  He also claims that Defendants retaliated against him for engaging in protected activity, specifically, sending the May 15, 2022 email complaining of age discrimination.  *Id.*  Defendants respond that Mr. Richter cannot make out a prima facie case of age discrimination or retaliation, but even if he could, he cannot show that Defendants' legitimate, non-discriminatory reasons for their actions were pretextual.  ECF No. 35.  After review of the parties' briefing, their statements of facts, and the relevant case law, the Court concludes that summary judgment in favor of Defendants is warranted.

### A.      Legal Framework

The familiar *McDonnell Douglas* burden-shifting framework applies to Mr. Richter's discrimination and retaliation claims under the ADEA and the PHRA.[3] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973);   *Burton*, 707 F.3d at 425–27;   *Mitchell v. Univ. of Pittsburgh*, No. 22-2876, 2023 WL 8596653, at *1–*2 (3d Cir. Dec. 12, 2023) (applying the *McDonnell Douglas* framework to ADEA and PHRA claims).

The *McDonnell Douglas* analysis has three steps.  First, the plaintiff must point to evidence sufficient to satisfy the elements of a prima facie case of employment discrimination or retaliation, thereby creating an inference that his employer acted unlawfully.  *See Burton*, 707 F.3d at 426. Next, the defendant must rebut this inference by articulating a legitimate, non-discriminatory reason for its actions.  *See id.*  The burden of production then shifts back to the plaintiff, who, in order to survive summary judgment, must provide evidence from which a jury could reasonably infer that the defendant's proffered explanation for its conduct is, in reality, pretext for unlawful discrimination or retaliation.  *See id.* at 426–27;  *see also Fuentes v. Perskie*, 32 F.3d 759, 763–64 (3d Cir. 1994) (setting forth burden shifting framework under *McDonnell Douglas* at summary judgment).   Although the *McDonnell Douglas* framework contemplates a shifting burden of *production*, the burden of *persuasion* always remains with the plaintiff.  *Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009).

The Court will address Mr. Richter's age discrimination claims and then turn to his retaliation claims.

---

[3] Because the "provisions of the PHRA and ADEA are 'analogous,'" the Court will analyze Mr. Richter's ADEA and PHRA claims together. *Mitchell*, 2023 WL 8596653, at *1.

**B.      Mr. Richter Cannot Establish a Prima Facie Case of Age Discrimination**

To establish a prima facie case of age discrimination, a plaintiff must first point to evidence

that he (1) is at least forty years old;  (2) suffered an adverse employment action;  (3) was otherwise

qualified for the position;  and (4) suffered the adverse employment action under circumstances

that support an inference of discrimination, such as being replaced by a younger employee.

*Mitchell v. Univ. of Pittsburgh*, No. 22-2876, 2023 WL 8596653, at *1 (3d Cir. Dec. 12, 2023)

(citing *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015)).

Producing evidence sufficient to satisfy the elements of a prima facie case creates an "inference of

unlawful discrimination."  *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 357 (3d Cir. 1999)

(quoting *Waldron v. SL Indus., Inc.*, 56 F.3d 491, 494 (3d Cir. 1995)).

Defendants challenge the fourth element of Mr. Richter's prima facie case—namely, that

they replaced Mr. Richter with someone sufficiently younger so as to create an inference of

discrimination.  ECF No. 35 at 7–8.  They assert that Mr. Richter cannot establish a prima facie

case as a matter of law because he was not replaced by anyone, cannot point to any similarly

situated comparators, and cannot show "any indicia of discriminatory animus."  *Id.* at 7–10.  Mr.

Richter responds that there is a genuine dispute of material fact as to whether he was treated less

fairly than similarly situated comparators, specifically Ms. Krebs and Mr. Miller.  ECF No. 48 at

4–5.

To determine whether a fellow employee is a similarly situated comparator, courts look at

several factors, including whether "'the two employees dealt with the same supervisor, were

subject to the same standards, and had engaged in similar conduct without such differentiating or

mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'"

*Opsatnik v. Norfolk S. Corp.*, 335 F. App'x 220, 223 (3d Cir. 2009) (quotation omitted).  "A

determination of whether employees are similarly situated takes into account factors such as the employees' job responsibilities, the supervisors and decision-makers, and the nature of the misconduct engaged in." *Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 882 (3d Cir. 2011).  Here, the Court finds that neither Ms. Krebs nor Mr. Miller are similarly situated comparators to Mr. Richter.

### 1.      Melissa Krebs is Not a Relevant Comparator

Mr. Richter contends that Ms. Krebs is a relevant comparator because she was also a gift officer subject to the same rules and policies as he was yet was treated more favorably when she allegedly made false claims to a donor but was not fired.  ECF No. 48 at 4–6.  Defendants assert that she is not an appropriate comparator because her conduct was not similar to Mr. Richter's because she was not found to have violated university policy.  ECF No. 35 at 8–10.  Here, the Court agrees with Defendants that Ms. Krebs is not a similarly situated comparator because she did not engage in comparable behavior to Mr. Richter.

The dispute arises from Mr. Miller's restructuring of the Advancement Division in early 2022.  ECF No. 52 ¶ 53.  It is uncontested that because Mr. Richter had 431 donors in his portfolio at the time—which he agreed was too many—Mr. Miller reassigned some of his donors, including assigning "Donor A" to Ms. Krebs.  *Id.* ¶¶ 55–57.  It is further undisputed that in March 2022, Ms. Krebs met with Donor A and indicated that Mr. Richter "ha[d] shared some of [his] thoughts . . . with her" regarding Donor A's portfolio, which was not true.  *Id.* ¶ 72.  Donor A eventually made a $50,000 donation to the University, but Mr. Richter believed the credit should go to him because Ms. Krebs "stole" the donor and lied to the donor.  *Id.* ¶¶ 57, 108.  It is undisputed that Mr. Richter informally complained to Mr. Miller about Ms. Krebs' actions, but Mr. Miller told Mr. Richter that she had done nothing wrong.  *Id.* ¶¶ 71, 72, 82.  In April and May 2022, Mr. Richter filed two

formal complaints with the Human Resources Department alleging that Ms. Krebs violated

university policies in securing a gift for Donor A and receiving the credit for it. *Id.* ¶¶ 84, 85, 110.

It is uncontested that Mr. Dedrick, the lead investigator of Mr. Richter's complaints, ultimately

found that Mr. Krebs' conduct did not violate university policy. *Id.* ¶ 115.  He explained that while

Ms. Krebs' statement to Donor A was misleading, it did not rise to the level of a policy violation

for unethical conduct. *Id.* ¶ 116.  It is further uncontested that in a separate investigation into Mr.

Richter's conduct in cultivating a gift from the Donor Couple, Mr. Dedrick found that Mr. Richter

had violated two university policies:  namely, the Gift Acceptance Policies and the Naming Policy

because he solicited a 100% deferred, revocable gift that promised naming rights to a university-

wide center in perpetuity without obtaining the necessary approvals from the Gift Acceptance

Committee and the President. *Id.* ¶ 172.

Mr. Richter's argument that he is similarly situated to Ms. Krebs fails because they did not

engage in comparable conduct as internal human resources investigations found that Ms. Krebs

had not violated university policies while finding that Mr. Richter had. *Connearney v. Main Line

Hospitals, Inc.*, No. 15-02730, 2016 WL 6569326, at *6 (E.D. Pa. Nov. 4, 2016) ("The standard

articulated by the Third Circuit contemplates *both* that the comparator engaged in the same or

similar behavior or actions *and* that his offense was of comparable seriousness to that of the

plaintiff.").  Accordingly, Ms. Krebs is not a similarly situated comparator giving rise to an

inference of discrimination.

### 2.     James Miller is Not an Appropriate Comparator

Mr. Richter also asserts that Mr. Miller is a similarly situated comparator who violated

university policies but was not terminated. ECF No. 48 at 10–12.  Defendants respond that Mr.

Miller is not an appropriate comparator because he was Mr. Richter's supervisor and thus not

similarly situated.  ECF No. 51 at 3–4.  The Court agrees with Defendants.  Mr. Miller was the

Senior Vice President of the Advancement Division and was therefore the head of Mr. Richter's

department.  ECF No. 52 ¶ 5, 8–10, 226.  As a department head and supervisor, Mr. Miller held a

different role in the University than Mr. Richter, making the two not similarly situated in all

relevant respects.  *See McGinnis v. Donahoe*, No. 12-01180, 2015 WL 507043 at *8 (W.D. Pa.

Feb. 6, 2015) (Conti, J.) (holding employee who served as plaintiff's supervisor was not in a similar

position as plaintiff and cannot be similarly situated to plaintiff).  Therefore, Mr. Miller cannot

serve as a comparator to establish a prima facie case of age discrimination.

### 3. Mr. Richter Cannot Establish an Inference of Discrimination

Additionally, Mr. Richter cannot point to any other evidence in the record creating an

inference of discrimination sufficient to make out the fourth element of his prima facie case.  He

does not point to discriminatory comments by his supervisors or other actions that may raise an

inference of discrimination.  Instead, he merely asserts and speculates that he was terminated

because of his age.  But mere "conjecture and speculation will not create a genuine issue of material

fact."  *Gardner v. Ulta Salon Cosmetics & Fragrance Inc.*, No. 22-2785, 2024 WL 1110384, at *2

(3d Cir. Mar. 14, 2024).  Accordingly, because Mr. Richter cannot point to a similarly situated

comparator, nor can he point to facts raising an inference of discrimination, he cannot make out

the fourth element of a prima facie case of discrimination.  Therefore, judgment on Mr. Richter's

ADEA and PHRA age discrimination claims will be granted in favor of Defendants.

### C. Mr. Richter Cannot Establish a Prima Facie Case of Retaliation

Mr. Richter's retaliation claim also fails at the prima facie stage.  To establish a prima facie

case for retaliation, a plaintiff must show that (a) he engaged in a protected activity, (b) the

employer took materially adverse action against him, and (c) there was a causal connection

between the protected activity and the employer's action. *Young v. City of Phila. Police Dept.*, 651 F. App'x 90, 95 (3d Cir. 2016) (citing *Moore v. City of Phila.*, 461 F.3d 331, 340–42 (3d Cir. 2006)). Defendants challenge the third element of Mr. Richter's prima facie case—namely, that there is a causal connection between Mr. Richter's complaint of age discrimination and his firing. ECF No. 35 at 11.

Defendants assert that Mr. Richter cannot establish a prima facie case as a matter of law because the ultimate decisionmaker in Mr. Richter's termination was unaware of the May 15, 2022 email complaining of age discrimination, there was a major intervening event between Mr. Richter's complaint and his firing, and the timing between the complaint and firing is not unusually suggestive. ECF No. 35 at 12–13. Mr. Richter responds that there is a genuine dispute of material fact as to whether Mr. Miller was aware of the age discrimination complaint, the undisputed facts show that Mr. Richter did not violate university policy, and the timing between his complaint and firing is suggestive of causation. ECF No. 48 at 6–10, 14.

The Court agrees with Defendants that Mr. Richter cannot establish the third element of his prima facie case.

> **1.    There are No Facts in the Record Showing that Mr. Miller Was Aware of Mr. Richter's Age Discrimination Complaint.**

Here, there are no facts in the record from which a reasonable jury could conclude that Mr. Miller was aware of the age discrimination complaint. First, it is uncontested that Mr. Miller testified that he was unaware of Mr. Richter's age discrimination accusations. ECF No. 52 ¶ 320. And Mr. Richter does not point to anything in the record indicating that Mr. Miller ever received, viewed, or was told about Mr. Richter's email complaining of age discrimination. Instead, the record supports Defendants' assertion that Mr. Miller never received the complaint: Mr. Richter sent his email complaining of age discrimination to a human resources representative, and not to

Mr. Miller.  ECF No. 52 ¶¶ 85, 319.  And while Mr. Richter suggests that the human resources representative spoke with Mr. Miller regarding the emailed complaint, *see* ECF No. 52 ¶ 321, the record evidence he cites does not support this.  He cites to Mr. Dedrick's first Investigative Report regarding Ms. Krebs, but that report shows that, on May 16, 2022, Mr. Miller and Mr. Dedrick met to discuss Mr. Richter's two formal complaints that do not mention age discrimination;  it does not show that Mr. Miller ever met with the human resources representative to discuss Mr. Richter's email.  ECF No. 50, Ex. 2 at 162–180.  Further, the record evidence cited by Defendants supports that Mr. Miller was never aware of the age discrimination complaint.  For example, it is undisputed that the only complaints from Mr. Richter that were sent to Mr. Miller did not contain allegations of age discrimination.  ECF No. 52 ¶¶ 86, 87, 110.  And Mr. Miller's Rebuttal to Mr. Richter's complaints does not mention age discrimination, nor does Mr. Dedrick's investigative report, further indicating that Mr. Miller was unaware of these allegations.  ECF No. 50, Ex. 2 at 162–180.  Therefore, there are no facts from which a reasonable jury could conclude that Mr. Miller was aware of Mr. Richter's age discrimination complaint.  And without the decisionmaker in Mr. Richter's firing being aware of the protected activity, Mr. Richter cannot establish causation at trial.  *See Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 196–97 (3d Cir. 2015) (finding that a plaintiff could not establish causation where the decision-maker in plaintiff's termination testified in a deposition that he was unaware of plaintiff's allegations and plaintiff did not rebut that evidence).  Accordingly, Mr. Richter cannot satisfy the third element of his prima facie case of retaliation.

> **2.      The Timing Between Mr. Richter's Age Discrimination Complaint and His Firing Is Not Unusually Suggestive**

Mr. Richter's assertion that he can satisfy the third element of his prima facie case based on the timing of his termination is unavailing.  "Unusually suggestive temporal proximity between

the protected activity and the adverse action can be sufficient 'to create an inference of causality and defeat summary judgment.'" *Harrison-Harper v. Nike Inc.*, 788 Fed. App'x 846, 849 (3d Cir. 2019) (citing *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007)). But there is "no bright line rule" for what length of time is unusually suggestive. *Id.* (explaining that courts have found three months is not enough, but two days is). Here, the Court finds that the three-month lapse between Mr. Richter's age discrimination complaint on May 15, 2022, and his firing on August 17, 2022, is not unusually suggestive. ECF No. 157 ¶¶ 14, 110, 174, 322; *Harrison-Harper*, 788 Fed. App'x at 849.

Further, the record evidence does not support Mr. Richter's assertion that there was only a 27-day lapse between his complaint and firing. He reaches this number by arguing that the protected activity occurred on July 20, 2022, when he believes Mr. Miller met with the human resources representative who had received Mr. Richter's age discrimination complaint. ECF No. 48 at 3; 52 ¶ 321. The record evidence, however, contradicts this. *See* ECF No. 52 ¶ 321 (citing ECF 50, Ex. 2 at 162–180, which is Mr. Dedrick's Investigative Report). Instead, the evidence shows that, on July 20, 2022, Mr. Dedrick sent Mr. Richter his Investigative Report showing that Ms. Krebs had not violated university policy. ECF 50, Ex. 2 at 162–180. In that report, Mr. Dedrick details the interviews he had with various employees throughout the investigation. *Id.* at 163. He notes that, on May 16, 2022, he—not the human resources representative—met with Mr. Miller to discuss Mr. Richter's formal complaints that did not discuss age discrimination. *Id.* There is no other record evidence showing that Mr. Miller met with the human resources representative to discuss Mr. Richter's age discrimination claim. Accordingly, the appropriate time period to consider is the date of the email complaining of age discrimination—May 15,

2022—and the date of the adverse action—August 17, 2022.  And as noted above, a lapse of approximately three months is insufficient to create an inference of causation.

Therefore, Mr. Richter cannot make out a prima facie case of causation:  he cannot show that Mr. Miller was aware of the age discrimination complaint or that the timing between his complaint and firing was unusually suggestive.  Accordingly, judgment on Mr. Richter's ADEA and PHRA retaliation claims will be granted in favor of Defendants.

## IV.    Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment, ECF No. 34, will be GRANTED, as more fully set forth in the attached Order.

DATED this 15th day of October, 2024.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record